## UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**MASSAGE GREEN INTERNATIONAL
FRANCHISE CORP.,**
a Michigan corporation,

      Plaintiff,

vs.

                                      Civil Action No. 19-cv-11916

                                      Honorable Paul D. Borman

**REINOL GONZALEZ,**
an individual,

      Defendant.

---

BUTZEL LONG, a professional corporation
By: Bernard J. Fuhs (P69621)
150 W. Jefferson – Suite 100
Detroit, Michigan 48236
(313) 225-7044
fuhs@butzel.com
Attorneys for Plaintiff

---

## PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

Plaintiff **MASSAGE GREEN INTERNATIONAL FRANCHISE CORP.**

("Plaintiff" or "Massage Green") seeks the issuance of a *limited* Temporary

Restraining Order and Preliminary Injunction to enjoin Defendant Reinol Gonzalez

("Mr. Gonzalez" or "Defendant") from (1) using and infringing on Plaintiff's

trademarks and (2) otherwise breaching his post-termination obligations under the

Franchise Agreements and Guarantees ("Franchise Agreements").

Defendant is a former franchisee of Plaintiff who recently closed and abandoned his franchised stores and locations in Florida.  As a result, Plaintiff formally terminated him as a franchisee and reminded him of his post-termination obligations under the Franchise Agreements.  Following his abandonment and termination, Plaintiff discovered that Defendant wrongfully used Plaintiff's customer lists and trademarks to communicate with Massage Green customers. Defendant's unauthorized communications with customers while using Plaintiff's Proprietary Marks, trademarks, and logos violates his post-termination obligations under the Franchise Agreements.

As a direct consequence of Defendant's wrongful actions, Massage Green is suffering irreparable harm and stands to lose its customer and franchisee relationships, the goodwill and referral business of its customers and franchisees, and revenues in an amount that cannot be readily ascertained. If Defendant is not immediately barred from violating the Franchise Agreements, and from otherwise participating in activities that violate the Franchise Agreements and the Lanham Act, Plaintiff will continue to suffer irreparable harm.

Pursuant to Fed. R. Civ. P. 65, Plaintiff seeks a Temporary Restraining Order and Preliminary Injunction against Defendant to prohibit the unlawful conduct and to protect Plaintiff from suffering further irreparable harm.  More specifically,

Plaintiff seeks an order restraining and enjoining Defendant, directly or indirectly, from the following until further order of the Court:

(1)   Using or otherwise infringing on Plaintiff's trademarks; and

(2)   Otherwise violating his obligations under the Franchise Agreements and Guarantees.

For the reasons stated more fully in the accompanying Brief in Support, Plaintiff requests that this Court grant its Motion for a Preliminary Injunction against Defendant expeditiously.

Respectfully submitted,

BUTZEL LONG, a professional corporation

By: /s/ Bernard J. Fuhs
Bernard J. Fuhs (P69621)
150 West Jefferson, Suite 100
Detroit, MI 48226
(313) 225-7000
fuhs@butzel.com
Attorney for Plaintiff

Dated: June 27, 2019

3

## UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**MASSAGE GREEN INTERNATIONAL
FRANCHISE CORP.,**
a Michigan corporation,

      Plaintiff,

vs.                                                  Civil Action No. 19-cv-11916

                                       Honorable Paul D. Borman

**REINOL GONZALEZ**
an individual,

      Defendant.

---

BUTZEL LONG, a professional corporation
By: Bernard J. Fuhs (P69621)
150 W. Jefferson – Suite 100
Detroit, Michigan 48236
(313) 225-7044
fuhs@butzel.com
Attorneys for Plaintiff

---

## BRIEF IN SUPPORT
## OF PLAINTIFF'S MOTION FOR TEMPROARY RESTRAINING ORDER
## AND PRELIMINARY INJUNCTION

## **TABLE OF CONTENTS**

INDEX OF AUTHORITIES ....................................................................ii

STATEMENT OF ISSUES PRESENTED ...............................................v

CONTROLLING OR MOST APPROPRIATE AUTHORITY ..............................vi

    I.  INTRODUCTION ....................................................................... 1

    II. STATEMENT OF FACTS ........................................................ 2

    III. ARGUMENT ........................................................................ 11

        A. Standard for Issuance of a Preliminary Injunction in the Sixth
           Circuit. ........................................................................... 11

        B. Plaintiff Satisfies the Criteria for the Issuance of a Preliminary
           Injunction. ...................................................................... 12

           1.  There is a strong likelihood that Plaintiff will prevail on the
               merits. ....................................................................... 12

               a. Defendant has materially breached the post-termination
                  obligations of the Franchise Agreements. ................................. 12

               b. Defendant is violating Section 32 of the Lanham Act. ............ 13

               c. Defendant is violating Section 43(a) of the Lanham Act. ........ 17

           2.  Plaintiff will continue to suffer irreparable harm if immediate
               injunctive relief is not granted. ........................................... 19

           3.  The Harm to Plaintiff Outweighs The Harm to Defendant ............. 21

           4.  The Public Interest Favors Preliminary Injunctive Relief ............... 21

           5.  No Security Bond Should be Required. ........................................... 22

    IV.   CONCLUSION ..................................................................... 23

i

# INDEX OF AUTHORITIES

**Cases**

*Ainsworth v. Hunting & Fishing Club,*
    153 Mich. 185; 116 N.W. 99 (1908)................................................................. 19

*ARP Films, Inc. v. Marvel Entm't Group, Inc.,*
    952 F.2d 643 (2d Cir. 1991)......................................................................... 16

*Audi AG v. D'Amato,*
    469 F.3d 534 (6th Cir. 2006) ...................................................................... 18

*Boston Prof'l Hockey Ass'n, Inc. v. Dallas Cap & Emblem Mfg., Inc.,*
    510 F.2d 1004 (5th Cir.), *cert. denied,* 423 U.S. 868 (1975)............................. 18

*Burger King Corp. v. Mason,*
    710 F.2d 1480 (11th Cir. 1983), *cert. denied,* 465 U.S. 1102 (1984) .......... 16, 17

*Certified Restoration Dry Cleaning Network, LLC v. Tenke Corporation,*
    511 F.3d 535 (6th Cir. 2007)........................................................................ 12

*Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Ctr.,*
    109 F.3d 275 (6th Cir. 1997) ....................................................................... 14

*Detroit v. Salaried Phys, UAW,*
    165 Mich. App. 142; 418 N.W.2d 679 (1987)....................................1, 3, i, 22, 24

*Domino's Pizza Franchising, LLC v. Yeager,*
    No. 09-14704, 2010 WL 374116 (E.D. Mich. January 25, 2010)....................... 15

*Dunkin' Donuts Franchising LLC v. Oza Bros., Inc.,*
    Case No. 10-13606, 2012 WL 4498118 (E.D. Mich.) Sep. 28, 2012) ......... 13, 23

*Grand Lodge FOP v. Labor Council Michigan FOP,*
    38 F.3d 1215 (6th Cir. 1984) ................................................................ 14, 17

*In re DeLorean Motors Co.,* 755 F.2d 1223 (6th Cir. 1985).................................. 11

*James Burrough, Ltd. v. Sign of Beefeater, Inc.,*

    540 F.2d 266 (7th Cir. 1976) ............................................................... 18

*Little Caesar Enterprises, Inc. v. R-J-L Foods, Inc.,*

    796 F. Supp. 1026 (E.D. Mich. 1992)......................................... 14, 20

*Lowry Computer Products, Inc. v. Head,*

    984 F. Supp. 1111 (E.D. Mich. 1997)......................................... 12, 13

*Merrill Lynch, Inc. v. Ran,*

    67 F. Supp. 2d 764 (E.D. Mich. 1999)................................................ 13

*Ohio State University v. Thomas,*

    738 F. Supp. 2d 743 (S.D. Ohio 2010) ............................................... 18

*Opticians Association v. Independent Opticians,*

    920 F.2d 187 (3d Cir. 1990)................................................................ 18

*Papa John's International Inc. v. Specktacular Pizza, Inc.,*

    Case No. 305CV515H, 2005 WL 3132337 (W.D. Ky. Nov.21, 2005).............. 16

*Reed Elsevier, Inc. v. TheLaw.net Corp.,*

    269 F.Supp.2d 942 (S.D. Ohio 2003) ................................................. 14

*S&R Corp. v. Jiffy Lube Int'l, Inc.,*

    968 F.2d 371 (3d Cir. 1992)................................................................ 18

*See Look! No Fault Insurance Agency, Inc. v. Saunders,*

    Case No. 00-CV-72383, 2002 WL 551030 (E.D. Mich. March 29, 2002) ........ 15

*Six Clinics Holding Corp. v. Cafcomp Sys., Inc.,*

    119 F.3d 393 (6th Cir. 1997)............................................................... 12

*Superior Consultant Co., Inc. v. Walling*,
    851 F. Supp. 839 (E.D. Mich. 1994) .......................................................... 13, 19

*Therma-Scan, Inc. v. Thermoscan, Inc.*,
    295 F.3d 623 (6th Cir. 2002) .............................................................. 14

*Two Men & a Truck/International v. Two Men & a Truck/Kalamazoo*,
    949 F. Supp. 500 (W.D. Mich. 1996) ................................................. 15

*Two Pesos v. Taco Cabana*,
    505 U.S. 763 (1992) .......................................................................... 18

*U.S. Structures, Inc. v. J.P. Structures, Inc.*,
    130 F.3d 1185 (6th Cir. 1996) ....................................................... 15, 17

*United States Jaycees v. Philadelphia Jaycees*,
    639 F.2d 134 (3d Cir. 1981) ............................................................. 19

*Urbain v. Knapp Brothers Manufacturing Co.*,
    217 F.2d 810 (6th Cir. 1954) ........................................................... 23

*VanderVreken v. American Dairy Queen Corp.*,
    261 F. Supp.2d 821 (E.D. Mich. 2003) ............................................. 16

**Statutes**

15 U.S.C. § 1115(a) ..................................................................................... 16

Lanham Act, 15 U.S.C § 1051 .............................................2, i, 2, 14, 15, 17, 20, 22

**Rules**

Fed. R. Civ. P. 65 ................................................................................. 2, 23

iv

## STATEMENT OF ISSUES PRESENTED

Whether this Honorable Court should grant Plaintiff's Motion for a Temporary Restraining Order and Preliminary Injunction against Defendant where: (1) Plaintiff has shown a likelihood of success on the merits; (2) irreparable harm will continue to result to Plaintiff if the preliminary injunction is not issued; (3) the threatened harm to Plaintiff outweighs the threatened harm the injunction may inflict on Defendant; and (4) the granting of the preliminary injunction will serve the public interest.

Plaintiff Answers: Yes

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

*Ainsworth v. Hunting & Fishing Club*,
    153 Mich. 185; 116 N.W. 99 (1908)

*Certified Restoration Dry Cleaning Network, LLC v. Tenke Corporation*,
    511 F.3d 535 (6th Cir. 2007)

*In re DeLorean Motors Co.,*
    755 F.2d 1223 (6th Cir. 1985)

*Little Caesar Enterprises, Inc. v. R-J-L Foods, Inc.,*
    796 F. Supp. 1026 (E.D. Mich. 1992)

*U.S. Structures, Inc. v. J.P. Structures, Inc.,*
    130 F.3d 1185 (6th Cir. 1996)

## I.      <u>INTRODUCTION</u>

Plaintiff **MASSAGE GREEN INTERNATIONAL FRANCHISE CORP.**
("Plaintiff" or "Massage Green") seeks the issuance of a *limited* Temporary
Restraining Order and Preliminary Injunction to enjoin Defendant Reinol Gonzalez
("Mr. Gonzalez" or "Defendant") from (1) using and infringing on Plaintiff's
trademarks and (2) otherwise breaching his post-termination obligations under the
Franchise Agreements and Guarantees ("Franchise Agreements").

Defendant is a former franchisee of Plaintiff who recently closed and
abandoned his franchised stores and locations.  As a result, Plaintiff formally
terminated him as a franchisee and reminded him of his post-termination
obligations under the Franchise Agreements.  Following his abandonment and
termination, Plaintiff recently discovered that Defendant wrongfully used
Plaintiff's customer lists and trademarks to communicate with Massage Green
customer.  Defendant's unauthorized communications with customers while using
Plaintiff's Proprietary Marks, trademarks, and logos violates his post-termination
obligations under the Franchise Agreements.

As a direct consequence of Defendant's wrongful actions, Massage Green is
suffering irreparable harm and stands to lose its customer and franchisee
relationships, the goodwill and referral business of its customers and franchisees,
and revenues in an amount that cannot be readily ascertained. If Defendant is not

1

immediately barred from violating the Franchise Agreements, and from otherwise participating in activities that violate the Franchise Agreements and the Lanham Act, Plaintiff will continue to suffer irreparable harm.

Pursuant to Fed. R. Civ. P. 65, Plaintiff seeks a Temporary Restraining Order and Preliminary Injunction against Defendant to prohibit the unlawful conduct and to protect Plaintiff from suffering further irreparable harm.   More specifically, Plaintiff seeks an order restraining and enjoining Defendant, directly or indirectly, from the following until further order of the Court:

(1)      Using or otherwise infringing on Plaintiff's trademarks; and

(2)      Otherwise violating his obligations under the Franchise Agreements and Guarantees and the Lanham Act.

## II.      STATEMENT OF FACTS

Defendant entered into three (3) **MASSAGE GREEN INTERNATIONAL FRANCHISE CORP.** franchise agreements (the "Franchise Agreements") with Plaintiff to own and operate three separate franchise locations in the State of Florida. (Compl. ¶ 6)

On February 25, 2014, Defendant signed a **MASSAGE GREEN INTERNATIONAL FRANCHISE CORP.** franchise agreement with Plaintiff Massage Green ("Davie Franchise Agreement") authorizing Defendant to operate a **MASSAGE GREEN**® franchise located at 4401 S. Flamingo Rd., Davie, FL 33330 (the "Davie Location"). (Compl. ¶ 7); *see* Ex. A to Compl.

2

Also on February 25, 2014, Defendant signed a **MASSAGE GREEN INTERNATIONAL FRANCHISE CORP.** franchise agreement with Plaintiff Massage Green ("South Kendall Franchise Agreement") authorizing Defendant to operate a **MASSAGE GREEN®** franchise located at 13550 SW 120th St. #410b, Miami, FL 33186 (the "South Kendall Location"). (Compl. ¶ 8); *see* Ex. B to Compl.

On December 11, 2015, Defendant signed a **MASSAGE GREEN INTERNATIONAL FRANCHISE CORP.** franchise agreement with Plaintiff Massage Green ("Pinecrest Franchise Agreement") authorizing Defendant to operate a **MASSAGE GREEN®** franchise located at 12209 South Dixie Hwy, Pinecrest, FL 33156 (the "Pinecrest Location"). (Compl. ¶ 9); *see* Ex. C to Compl.

As part of the Franchise Agreements, Defendant also signed personal guarantees and assumptions of franchisee's obligations promising full performance and observance of all of the covenants, conditions and agreements required by the Franchise Agreements. (Compl. ¶ 10).

Under Section 17.1 of the Franchise Agreements, the term of the Franchise Agreements expired ten (10) years from the date the Franchise Agreement was entered into. (Compl. ¶ 11). Also, pursuant to the Franchise Agreements, Defendant agreed and acknowledged that the "Proprietary Marks, or any other name, symbol or identifying marks on any signs shall only be used in accordance with the Franchisor's standards and specifications and only with the prior written approval of the

3

Franchisor which such approval or disapproval shall be at the sole discretion of the Franchisor." (Compl. ¶ 12).

The Proprietary Marks, Trade Names, and Proprietary Interests, and the rights to Franchisor and Franchisee therein, are detailed in Section 13 of the Franchise Agreements. (Compl. ¶ 13). Under Section 13.3, Defendant agreed that "Franchisee further acknowledges that Franchisee's right to use the Proprietary marks is derived solely from this Agreement and is limited to the conduct of business by Franchisee pursuant to and in compliance with this Agreement and all applicable standards, specifications, and operating procedures prescribed by Franchisor in the Operations Manual and elsewhere from time to time at its sole discretion during the term of this Agreement." (Compl. ¶ 14). Section 13.17 of the Franchise Agreements states that "[a]ny unauthorized use of the Proprietary Marks by Franchisee constitutes a material breach of this Agreement and an infringement of the rights of Franchisor and MGH in and to the Proprietary Marks. (Compl. ¶ 15).

Section 14.3 states of the Franchise Agreements states that "Franchisee hereby acknowledges that Franchisor shall be entitled to immediate equitable remedies, including, without limitation, restraining orders and preliminary injunctive relief in order to safeguard such proprietary, confidential, unique and special information of Franchisor and that money damages alone would be an insufficient remedy with

4

which to compensate Franchisor for any breach of the terms of Sections 14 and 20 herein." (Compl. ¶ 16).

Plaintiff recently became aware that Defendant had abandoned the three franchise locations in violation of the Franchise Agreements. *See* **Ex. A-C**, § 18.1(b). Upon learning of the breach and abandonment, and pursuant to the Franchise Agreements, Notice of Termination of the Davie Location was provided to Defendant on May 31, 2019. (Compl. ¶ 17). As detailed in the Davie Notice of Termination, Defendant ceased operating the Franchised Store and the landlord at the location notified Plaintiff that Defendant ceased operating and surrendered possession of the location to the Landlord. (Compl. ¶ 18). Based on Defendant's abandonment, Plaintiff exercised its right to terminate the Franchise Agreement. *Id.*

In the Davie Notice of Termination, Plaintiff also reminded Defendant of the Franchise Agreement's post-termination obligations and any monetary obligations owed by Defendant to Plaintiff, its affiliates, the Local Advertising Cooperative, and the National Advertising Fund. (Compl. ¶ 19).

On June 7, 2019, Plaintiff issued a Notice of Termination of Franchise Agreements to Defendant concerning Plaintiff's termination of the South Kendall and Pinecrest Franchise Agreements. (Compl. ¶ 20). This Notice also reminded Defendant of his post-termination obligations. *Id.*

Section 18.4[1] of the Franchise Agreements states that, post-termination, Defendant is responsible and obligated, among other things, to:

a. Pay to Franchisor, its Affiliates, vendors, the Local Advertising Cooperative and the National Advertising Fund, all Royalty Fees, other fees, and any and all other amounts then owed them pursuant to the Franchise Agreement, or pursuant to any other agreement, whether written or oral, between the respective parties...;

b. Discontinue all use, imitation or duplication of all distinguishing characteristics of the System, including but not limited to, Massage Green Trade Secrets, the Proprietary Marks, Massage Green signs, symbols, devices, copyrights, trade names, trademarks, or other materials, including, without limitation, all brochures, invoices, business cards, advertisements or any other materials that mention or contain the Massage Green Trade Secrets, the Proprietary Marks, Massage Green signs, symbols, devices, copyrights, trade names or trademarks;

c. Immediately cease to identify the Franchised Location as being, or having been, associated with Franchisor, immediately cease using any Proprietary Mark of Franchisor or any mark in any way associated with Proprietary Marks and System, immediately cease from using the System, or any parts thereof, and immediately cease from holding yourself out to the public in any way as a member of or as a former member of the System or as a current or former Franchisee, affiliate or operator of the System;

d. Deliver to Franchisor all signs, sign faces, advertising materials, point of sale material, forms and other materials bearing any of the Proprietary Marks or otherwise identified with Franchisor and obtained by and in connection with this Agreement;

---

[1] The post-termination obligations are found in Section 18.4 of the Davie and South Kendall Franchise Agreements, but is included in Section 18.5 of the Pinecrest Franchise Agreement. For ease of reference, this section will be referred to as "Section 18.4."

e. Immediately deliver to Franchisor the Operations Manual and all other information, documents and copies thereof (authorized or otherwise) which are proprietary to Franchisor;

f. Promptly cause to be canceled all fictitious or assumed names or equivalent registrations relating to your use of any Proprietary Marks, which are under the exclusive control of Franchisor, or, at the option of Franchisor, assign the same to Franchisor;

g. Take such action within five (5) days as may be required to cancel or assign, in Franchisor's sole and absolute discretion, all registrations relating to your use of any of the Proprietary Marks.  You must notify the telephone company, all listing agencies, and all internet service providers of the termination or expiration of your right to use any telephone number, any classified or other telephone directory listings, and any domain names associated with the Proprietary Marks and shall authorize the transfer of same to Franchisor or any new franchisee as may be directed by Franchisor. The Franchisee acknowledges as between the Franchisor and the Franchisee, the Franchisor has the sole rights to, and interest in all telephone numbers, directory listings, and domain names used by Franchisee to promote the Franchised Store and/or associated with the Proprietary Marks….;

h. Abide by all restrictive covenants set forth in Section 20 of the Franchise Agreement;

i. Discontinue use of any web sites or email addresses which were used in connection with the Franchised Store;

j. Abide by all other conditions or obligations of Franchisee in the Franchise Agreement that continue after termination or expiration of the Franchise Agreement.

(Compl. ¶ 21).

Following the abandonment, termination and reminders above, Plaintiff discovered that Defendant breached his post-termination obligations under Section

18.4 of the Franchise Agreements.    Among other things, Defendant wrongfully used Plaintiff's trademarks. (Compl. ¶ 22).

On Tuesday, June 18, 2019, almost two weeks after Plaintiff's termination of the Franchise Agreements, Defendant sent an email to Massage Green customers under the Massage Green trademark letterhead. The email stated:

> Dear Massage Green Spa Members,
>
> You recently received an email or Facebook Post from Massage Green International, advising you that several local massage green franchises had abruptly closed to the surprise of Massage Green International.
>
> The email and Facebook post contained erroneous information which created uncertainty rather than provide guidance to members. We hope that this message provides some measure of resolution to you our valued customers.
>
> There of our local franchises did close at the end of May due to Long Standing issues that were discussed extensively with Massage Green International.
>
> Although you were told the closings were abrupt, Massage Green International was intimately aware of the challenges faced by the local franchises and the inevitable closures.
>
> Fortunately, you have very reputable local franchises that remain in business and can provide services to you. With regard to the agreements that you signed, those agreements are with Massage Green International. We expect that Massage Green International will honor its agreements and provide support to its members.
>
> Although Massage Green International made statements that it is evaluating legal action, we believe it is inappropriate to comment on potential legal matters.

We have truly valued you as our customers and are proud of the services provided to you over the past few years. It is with heaviness of heart that were unable to continue. We wish you much success and good health.

If you have any questions regarding Massage Green, kindly refer those questions to Massage Green International at its last known contact as follow:

**Massage Green International Franchise Corporation**
2254 Cole St.
Birmingham, MI 48009
1-844-400-GREEN

**Allie Malad, CEO 313-942-9900**
Alliemallad1@gmail.com

**Carlos Guzman, Pres. 954-559-2117**
Cguz365@gmail.com

(Compl. ¶ 23). The email came from "**Massage Green Spa**" at the address: Info@massagegreensfl.com. (Compl. ¶ 24).

Also on June 18, 2019, Defendant sent the same email to customers, but this time used his personal email address – reinolgonzalez@gmail.com and signed it "Sincerely, Reinol A. Gonzalez." (Compl. ¶ 25).

These communications, including the use of the Massage Green trademark and logo, violate multiple provisions of Section 18.4 of the Franchise Agreements, along with violations of federal and common law trademark law. (Compl. ¶ 26). Further, the use of Plaintiff's trademarks and logos and the inclusion of Mr. Mallad and Mr. Guzman's contact information may lead a customer to believe that

9

Defendant is acting on behalf of Massage Green International, or even that he is Mr. Mallad or Mr. Guzman. (Compl. ¶ 27).

Defendant also remains responsible for all gift cards and pre-paid memberships issued by the franchises before the termination of the Franchise Agreements, along with future royalties and other damages. (Compl. ¶ 28). On June 18, 2019, Plaintiff filed a Demand for Arbitration against Defendant to recover the monetary damages Plaintiff has incurred and will continue to incur, including the outstanding membership, gift card, and royalty liabilities described above. (Compl. ¶ 29).

But, pursuant to Sections 22.1 and 23.6 of the Franchise Agreements, Plaintiff is also seeking limited injunctive relief in this Court to enjoin Defendant from continuing to using Plaintiff's trademarks and otherwise abiding by his post-termination obligations. (Compl. ¶ 30).

On June 19, 2019, Plaintiff notified Defendant and his Florida counsel of the Demand for Arbitration, demanded that Defendant cease and desist from using Plaintiff's trademarks, and notified Defendant that it would be seeking injunctive relief. (Compl. ¶ 31).

As a direct consequence of Defendant's actions, Plaintiff Massage Green is suffering irreparable harm and stands to lose its customer relationships, its relationship with its current franchisees, the goodwill and referral business of its

10

customers and franchisees, the loss of fair competition, and revenues in an amount that cannot be readily ascertained. (Compl. ¶ 32). If Defendant is not immediately barred from participating in activities that violate provisions of the Franchise Agreements, including his post-termination obligations, Plaintiff Massage Green will continue to suffer irreparable harm. (Compl. ¶ 33).

Plaintiff Massage Green lacks an adequate remedy at law to address the substantial and irreparable harm it is suffering as the result of Defendant's actions. (Compl. ¶ 34). If a preliminary injunction is not issued, as requested herein, immediate and irreparable injury will result to Plaintiff Massage Green before Defendant can be heard in opposition. (Compl. ¶ 35).

## III.   ARGUMENT

### A.   Standard for Issuance of a Preliminary Injunction in the Sixth Circuit.

A plaintiff may obtain a preliminary injunction by demonstrating to the court that the defendant is acting in a manner that will irreparably injure plaintiff or that will render a final judgment on the merits ineffectual. *In re DeLorean Motors Co.,* 755 F.2d 1223, 1229 (6th Cir. 1985).  In granting a preliminary injunction, a court will determine: (1) whether the plaintiff has shown a likelihood of success on the merits; (2) whether irreparable harm could result to plaintiff if the preliminary injunction is not issued; (3) whether the threatened harm to the plaintiff outweighs the threatened harm the injunction may inflict on the defendant; and (4) whether

11

the granting of the preliminary injunction will serve the public interest. *Lowry Computer Products, Inc. v. Head,* 984 F. Supp. 1111, 1113 (E.D. Mich. 1997). "These factors are not prerequisites that must be met, but must be balanced together." *Certified Restoration Dry Cleaning Network, LLC v. Tenke Corporation,* 511 F.3d 535, 542 (6th Cir. 2007) (internal citations omitted)

**B.    Plaintiff Satisfies the Criteria for the Issuance of a Preliminary Injunction.**

The four-factor analysis above supports issuance of a preliminary injunction in this case for the reasons set forth below:

**1.    There is a strong likelihood that Plaintiff will prevail on the merits.**

When evidencing a strong likelihood of success on the merits, it is sufficient "if the plaintiff has raised questions going to the merits so serious, substantial, difficult, and doubtful as to make them a fair ground for litigation and thus for more deliberate investigation." *Certified Restoration*, 511 F.3d at 543 (quoting *Six Clinics Holding Corp. v. Cafcomp Sys., Inc.*, 119 F.3d 393, 402 (6th Cir. 1997)).

**a.    Defendant has materially breached the post-termination obligations of the Franchise Agreements.**

Plaintiff is likely to succeed on the merits of its action against Defendant for breach of the Franchise Agreements, including the post-termination obligation provisions and the unlawful continued use of Plaintiff's trademarks. Defendant's continued use of Plaintiff's trademarks to contact Massage Green customers

12

constitutes direct violations of the Franchise Agreements. *See Dunkin' Donuts Franchising LLC v. Oza Bros., Inc.*, Case No. 10-13606, 2012 WL 4498118, at *7 (E.D. Mich. Sep. 28, 2012) (holding that defendants' "continued used of Dunkin's' trademarks, trade name, and trade dress" violated the post-termination obligations of the franchise agreement and was sufficient to show a likelihood of success at the preliminary injunction stage).

It also cannot be disputed that the Franchise Agreements protect Plaintiff's legitimate business interests. Businesses have an interest in protecting confidential and proprietary information, such as customer lists, profit margins, corporate strategies, and pricing schemes. *Lowry*, 984 F. Supp. at 1116; *Superior Consultant Co., Inc. v. Walling*, 851 F. Supp. 839, 847-48 (E.D. Mich. 1994); *Merrill Lynch, Inc. v. Ran*, 67 F. Supp. 2d 764, 775 (E.D. Mich. 1999). Because Defendant had access to and utilized on a regular basis Massage Green's most confidential information and was granted rights to Massage Green's trademarks, logos, intellectual property, and operation systems, there is no dispute that Massage Green has the requisite protectable interests.

b. Defendant is violating Section 32 of the Lanham Act.

As a former Massage Green franchisee, Defendant continues to violate Section 18.4 of the Franchise Agreement's post-term obligations by unlawfully continuing to use Plaintiff's Massage Green Proprietary Marks, trademarks, and logos. Once a

franchisee's franchise agreement has expired or is terminated, the franchisee has the obligation under federal law to cease using the franchisor's trademarks. *Little Caesar Enterprises, Inc. v. R-J-L Foods, Inc.,* 796 F. Supp. 1026, 1030 (E.D. Mich. 1992). Such illegal use constitutes trademark infringement and unfair competition under the federal Lanham Act, 15 U.S.C § 1051, *et seq.* To succeed under section 32 of the Lanham Act, Plaintiff must show that: (1) the Massage Green trademarks are valid and legally protectable; (2) it owns the Massage Green trademarks and continuously uses the Marks; and (3) Defendant's use of the marks creates a likelihood of confusion concerning the origin of the goods or services. *Reed Elsevier, Inc. v. TheLaw.net Corp.*, 269 F.Supp.2d 942, 950 (S.D. Ohio 2003); *see also Therma-Scan, Inc. v. Thermoscan, Inc.,* 295 F.3d 623, 629 (6th Cir. 2002) (citing *Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Ctr.,* 109 F.3d 275, 280 (6th Cir. 1997)).

There is no dispute that Plaintiff has the exclusive right to license the use of these names and marks, and that those marks are valid and legally protectable. All of the Massage Green trademarks that Defendant is currently infringing on have been registered on the principal register of the United States Patent and Trademark Office. Such registration is *prima facie* evidence that Plaintiff has an exclusive right to the use of the Massage Green trademarks. *See* 15 U.S.C. § 1115(a); *Grand Lodge FOP v. Labor Council Michigan FOP,* 38 F.3d 1215 (6th Cir. 1984).

14

Defendant is an ex-franchisee that no longer has the right to contact Massage Green customers using the Massage Green trademarks and he is therefore infringing upon them. The law is clear that termination of a trademark license precludes further use by the franchisee. *See Look! No Fault Insurance Agency, Inc. v. Saunders,* Case No. 00-CV-72383, 2002 WL 551030 at*2 (E.D. Mich. March 29, 2002)[2] ("The likelihood of confusion test is satisfied if a former franchisee continues to use the franchisor's trademarks after termination or revocation of a franchise agreement"); *see also U.S. Structures, Inc. v. J.P. Structures, Inc.,* 130 F.3d 1185, 1190 (6th Cir. 1996) (holding that the unauthorized use of an authentic mark by one whose license to use that mark had expired or had been terminated constituted clear trademark infringement under sections 32 and 43 of the Lanham Act). Indeed, "[t]he law is well settled that continuing to use a franchise mark after the franchisee relationship has been terminated is a violation of the Lanham Act" resulting in a very heavy probability that Plaintiff will prevail on the merits. *Two Men & a Truck/International v. Two Men & a Truck/Kalamazoo*, 949 F. Supp. 500, 504 (W.D. Mich. 1996); *see also Domino's Pizza Franchising, LLC v. Yeager*, No. 09-14704, 2010 WL 374116, at *3 (E.D. Mich. January 25, 2010) (finding that franchisor demonstrated a strong likelihood of success on the merits of their trademark infringement claim based on

---

[2] Copies of all unpublished Westlaw cases cited herein are attached as **Exhibit A**.

15

sworn affidavit by franchisor that terminated franchisee continued to use trademarks after termination.).

Furthermore, the entitlement to an injunction is so strong that even an allegation that the termination of the trademark license is unlawful will not entitle the ex-franchisee to continue using the marks. *See VanderVreken v. American Dairy Queen Corp.*, 261 F. Supp.2d 821 (E.D. Mich. 2003) (holding that even where substantial likelihood of success of the merits is lacking, injunction should issue preventing future use of the trademarks); *Papa John's International Inc. v. Specktacular Pizza, Inc.*, Case No. 305CV515H, 2005 WL 3132337 at *4 (W.D. Ky. Nov.21, 2005) ("The infringement of a trademark is not a proper self-help remedy for a breach of contract."). *See also ARP Films, Inc. v. Marvel Entm't Group, Inc.,* 952 F.2d 643, 649 (2d Cir. 1991).

*Burger King Corp. v. Mason,* 710 F.2d 1480 (11th Cir. 1983), *cert. denied,* 465 U.S. 1102 (1984) is also instructive. In *Burger King v. Mason,* the plaintiff sought to enjoin an ex-franchisee from continuing to use the Burger King trademark.  In concluding that the use of an original mark after termination of the license constituted infringement, the court stated:

> Common sense compels the conclusion that a strong risk of consumer confusion arises when a terminated franchisee continues to use the former franchisor's trademarks…..Consumers automatically would associate the trademark user with the registrant and assume that they are affiliated. . . . Because of this risk, many courts have held that

16

> continued trademark use by one whose trademark license has been
> canceled . . . constitutes trademark infringement.

*Burger King,* 710 F.2d at 1492-93. *See also U.S. Structures,* 130 F.3d at 1189-91

(likelihood of confusion is only an issue of fact when similar, but different,

trademarks are in use; when identical marks are used, confusion is established as a

matter of law).  Here, Defendant's continued communication with Massage Green

customers while using Plaintiff's name and trademarks is certainly going to cause

confusion as to who is authorized to speak on behalf of Plaintiff. As the Massage

Green trademarks are valid, the marks are owned and used by Plaintiff, and the

Defendant's use creates a likelihood of confusion as to the origin of the

communications, there is a substantial likelihood that Plaintiff will succeed on its

Section 32 claim.

### c. Defendant is violating Section 43(a) of the Lanham Act.

Conduct that violates section 32 of the Lanham Act (unauthorized use of

registered marks) also violates section 43 of the Lanham Act (false designation of

origin). Stated differently, the same facts which support a claim for trademark

infringement under section 32 of the Lanham Act will generally support an action

for false designation of origin of goods or services under section 43 of the Lanham

Act.  *See, e.g., Grand Lodge FOP v. Labor Council Michigan FOP*, 38 F.3d at

1215*; see also Boston Prof'l Hockey Ass'n, Inc. v. Dallas Cap & Emblem Mfg.,*

*Inc.,* 510 F.2d 1004, 1010 (5th Cir.), *cert. denied,* 423 U.S. 868 (1975) (holding "the same facts which would support an action for trademark infringement [under Section 32(1)] would also support an action for unfair competition [under Section 43(a)]"). Therefore, under the Lanham Act, the same test and same facts are used "to decide whether there has been trademark infringement, unfair competition, or false designation of origin." *Audi AG v. D'Amato*, 469 F.3d 534, 542 (6th Cir. 2006) (citing *Two Pesos v. Taco Cabana,* 505 U.S. 763, 780 (1992)); *accord Ohio State University v. Thomas*, 738 F. Supp. 2d 743, 749 (S.D. Ohio 2010) and *James Burrough, Ltd. v. Sign of Beefeater, Inc.*, 540 F.2d 266 (7th Cir. 1976).

There can be no dispute that by continuing to use Plaintiff's trademarks in Defendant's communications with customers, Defendant is deceiving customers into believing that he remains affiliated with Plaintiff and that this is causing Plaintiff irreparable harm. *See Audi AG v. D'Amato,* 341 F. Supp. 2d 734 (E.D. Mich. 2004) ("In the context of trademark litigation, 'grounds for irreparable harm' include loss of control of reputation, loss of trade, and loss of goodwill,' regardless of whether the infringer is putting the mark to a good or favorable use.") (citing *S&R Corp. v. Jiffy Lube Int'l, Inc.,* 968 F.2d 371 (3d Cir. 1992) (concurrent use of the same trademark is "highly likely to cause consumer confusion about [the plaintiff's] affiliation with the franchise")); *Opticians Association v. Independent Opticians,* 920 F.2d 187, 195 (3d Cir. 1990) ("likelihood of confusion is an

18

inevitable result of the concurrent use" of marks); *United States Jaycees v. Philadelphia Jaycees,* 639 F.2d 134, 142 (3d Cir. 1981) ("there is great likelihood of confusion when an infringer uses the exact trademark, in this case 'Jaycees'").

Simply stated, Defendant is no longer a franchisee of Plaintiff, and therefore no longer in Plaintiff's franchise system. Accordingly, Defendant's continued communications with customers while using Plaintiffs' trademarks creates a likelihood of confusion and constitutes trademark infringement as a matter of law. Plaintiff's reputation and goodwill can only suffer if Defendant continues to misrepresent an affiliation with Plaintiff. Consequently, Plaintiff meets and exceeds the standard for succeeding on its claim that Defendant's unauthorized use of its trademarks violates the Lanham Act.

### 2. <u>Plaintiff will continue to suffer irreparable harm if immediate injunctive relief is not granted.</u>

Plaintiff will suffer irreparable harm if a preliminary injunction is not granted. In discussing irreparable harm, the Michigan Supreme Court has noted that:

> An injury to be irreparable need not be such as to render its repair physically impossible; but it is irreparable when it cannot be adequately compensated in damages, or when there exists no certain pecuniary standard for the measurement of damages due to the nature of the right or property injured.

*Ainsworth v. Hunting & Fishing Club*, 153 Mich. 185; 116 N.W. 99 (1908) (citations omitted). Similarly, Judge Cohn, in *Superior*, 851 F. Supp. at 847, stated

that "[l]oss of customer goodwill and fair competition can support a finding of irreparable harm. Such losses are difficult to calculate." *Id.* at 847.

In *Little Caesar Enterprises*, the Court explained that "control of [a] trademark is critical since a licensor who fails to monitor his trademark risks a determination that it has been abandoned." 796 F. Supp. at 1035. "If a trademark owner allows licensees to depart from its quality [or other] standards, the public will be misled, and the trademark will cease to have utility as an informational device. *Id.* Further, the Court held that "the unauthorized use of a mark by a former franchisee 'invariably threatens injury to the economic value of the goodwill and reputation associated with a licensor's mark,' and consequently, a showing of likelihood of confusion simultaneously demonstrates the requisite irreparable harm necessary to obtain a preliminary injunction." *Id.* (internal citations omitted).

If Defendant is permitted to abandon his post-termination obligations under the Franchise Agreements to Plaintiff, as he has, and continues to communicate with customers while using Plaintiff's trademarks, Plaintiff will continue to suffer serious and severe irreparable harm and stands to lose its customer relationships, its relationship with its current franchisees, the goodwill and referral business of its customers, the loss of customer goodwill, and revenues in an amount that cannot be readily ascertained. This harm cannot possibly be fully compensable through the recovery of monetary damages. For these reasons, Plaintiff has established that it will

20

suffer irreparable injury if a preliminary injunction is not granted against Defendant. Therefore, this Court should issue a temporary restraining order and preliminary injunction to prevent further irreparable harm to Plaintiff.

**3.**      **The Harm to Plaintiff Outweighs The Harm to Defendant**

As noted above, the irreparable harm to Plaintiff is real and immediate and cannot be adequately compensated by damages. In contrast, the grant of injunctive relief sought by Plaintiff would only compel Defendant to live up to his contractual commitments and to cease wrongfully communicating with Massage Green customers using Massage Green trademarks.

Defendant's violation of the post-termination obligations in the Franchise Agreements in this case is willful and deliberate and in total disregard of Plaintiff's clear legal rights and the public interest. The harm to Plaintiff, should this Court deny a preliminary injunction, far outweighs the harm to Defendant should it be granted.

**4.**      **The Public Interest Favors Preliminary Injunctive Relief**

The public interest in protecting confidential information and trademarks justifies preliminary injunctive relief. The public derives substantial benefit from the services provided by those who, like Plaintiff, train entrepreneurs to develop new businesses. Communities benefit from the variety, competition, and quality of service they enjoy through the efforts of franchisors such as Plaintiff. Franchisees are

provided professional training, skills, and the promotional advantages of a recognized trade name, which enable them to establish their own businesses at a fraction of the cost of beginning from scratch. If franchisors are unable to protect themselves and their systems from those who would take unfair advantage of the benefits of exposure to a franchised system, Plaintiff and other franchisors may be forced to alter their way of doing business, to the detriment of the consuming public.

The public also has an interest in proper adjudication of disputes. The object of a preliminary injunction is "to preserve the status quo (*i.e.*, the uncontested status which precedes the pending controversy)." *Detroit v. Salaried Phys, UAW*, 165 Mich. App. 142, 151; 418 N.W.2d 679 (1987). In this case, the status quo to be preserved is the status that preceded Defendant's breach of contract. A preliminary injunction would simply insure that no further injury will result to Plaintiff pending a final hearing on the merits. Thus, the public interest supports not only the enforcement of a reasonable agreement, but also the enjoining of violations of such agreement prior to a trial.

### 5.    No Security Bond Should be Required.

Under Rule 65 of the Federal Rules of Civil Procedure, "[n]o restraining order or preliminary injunction shall issue except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been

wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). In the Sixth Circuit, application of this rule has been within the sound discretion of the trial judge. *Dunkin' Donuts*, Case No. 08-12836, 2008 WL 5384077, at \*9 (E.D. Mich. Dec. 23, 2008) (citing *Urbain v. Knapp Brothers Manufacturing Co.*, 217 F.2d 810 (6th Cir. 1954)) (holding that there was no need for imposing a bond on Plaintiff in trademark case against franchisee because the likelihood of success on the merits was so strong). However, pursuant to Section 23.6 of the Franchise Agreement, Defendant agreed that if it was necessary for the Plaintiff to seek preliminary or permanent injunctive relief, Plaintiff may do so without a bond. (Exhibit A, § 23.6 to Complaint).

## IV.   CONCLUSION

Based on the foregoing, Plaintiff respectfully requests that this Court grant its motion for a temporary restraining order and preliminary injunction in its entirety. Attached as **Exhibit B** is a Proposed Temporary Restraining Order and Preliminary Injunction Order.

Respectfully submitted,

BUTZEL LONG, a professional corporation

By: */s/ Bernard J. Fuhs*        
    Bernard J. Fuhs (P69621)
150 West Jefferson, Suite 100
Detroit, MI 48226
(313) 225-7000
fuhs@butzel.com
Attorneys for Plaintiff

Dated: June 27, 2019